UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JACK MENOUGH, | ) | CASE NO.  4:11-CV-1224 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **<u>MEMORANDUM OPINION & ORDER</u>** |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Jack Menough's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. <u>INTRODUCTION & PROCEDURAL HISTORY</u>

On October 26, 2007, Plaintiff Jack Menough ("Plaintiff" or "Menough") protectively applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits.  (Tr. 67-70, 134-45).  Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 67-70).  Thereafter, Plaintiff requested a hearing to contest the denial of his applications for benefits.  (Tr. 85).  The Social Security Administration granted Menough's request and scheduled a hearing before an administrative law judge.  (Tr. 90-97).

On April 13, 2010, Administrative Law Judge Norma Cannon (the "ALJ") convened a hearing to evaluate Plaintiff's applications for benefits.  (Tr. 32-66).  Menough appeared with counsel and testified before the ALJ.  (*Id.*).  Vocational expert, Mr. Eugene Teachman, also appeared and testified at the proceeding.  (*Id.*).  On May 14, 2010, the ALJ issued an unfavorable decision denying Menough's requests for benefits.  (Tr. 6-26).  Following this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council.  (Tr. 126).  However, the council denied Menough's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-5).  Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  ALJ's RULING

The ALJ applied the standard five-step sequential analysis[1] in evaluating Menough's applications for benefits.  At step one of the evaluation process, the ALJ found Menough had not

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her

2

engaged in substantial gainful activity since Plaintiff's alleged onset date of October 13, 2007.

(Tr. 11).  At step two, the ALJ held Plaintiff suffered from the following severe impairments:

Borderline Personality Disorder, Affective Disorder and Polysubstance Dependence/Abuse.

(*Id.*).  But, at step three, the ALJ ruled none of these impairments, individually or combined, met

or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Tr. 12-13).  Before moving to the next step, the ALJ assessed Menough's residual functional

capacity ("RFC") to work.  (Tr. 13-24).  The ALJ concluded Plaintiff retained the ability to

perform a full range of work at each exertional level, but with certain non-exertional limitations.

(Tr. 13).  For example, the ALJ restricted Plaintiff from working around hazards, and limited

him to "entry level, unskilled, routine and repetitive work, working with things as opposed to

people."  (*Id.*).  As a result, at step four, the ALJ ruled Menough could not return to any of his

past positions because those jobs did not align with Menough's current RFC.  (Tr. 24).

However, at the final step of the sequential analysis, the ALJ concluded there were other jobs,

existing in significant numbers in the national economy, which Menough could perform such as

that of a scrap sorter, machine cleaner and type copy examiner.  (Tr. 24-25).

## III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security

Income benefits only when he establishes disability within the meaning of the Social Security

Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform

"substantial gainful employment by reason of any medically determinable physical or mental

---

residual functional capacity and vocational factors (age, education, skills, etc.),
she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d
528, 534 (6th Cir. 2001).

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

4

## V.  ANALYSIS

Plaintiff attacks the ALJ's ruling on two grounds.  First, Menough contends the ALJ erred by failing to recognize Plaintiff's anxiety disorder with panic attacks as one of his severe impairments at step two of the sequential analysis.  Second, Plaintiff asserts various challenges to the ALJ's evaluation of the medical opinion evidence of record.  Both arguments are addressed below.

### 1.  Severe Impairment

The second step in the sequential analysis, determining whether a claimant suffers from any severe impairment, is used as a screening tool, permitting ALJs to dismiss "totally groundless" claims from a medical standpoint at an early stage in the analysis.  *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988).  At this step, the claimant must show that he has an impairment which significantly interferes with his ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c); 416.920(c).  The ALJ's ruling here is viewed under a *de minimis* standard.  *Salmi v. Sec'y of Health & Human Servs.,* 774 F.2d 685, 691-92 (6th Cir. 1985); *Childrey v. Chater,* 91 F.3d 143 (6th Cir. 1996) (Table).  Accordingly, a claimant's impairment will only be construed as non-severe when it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education and work experience."  *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985) (*citing Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)).

Nevertheless, an ALJ's failure to properly name one of a claimant's impairments as severe will not always constitute reversible error.  Remand is not necessary, so long as the ALJ finds the claimant to suffer from at least one severe impairment and continues to evaluate both

the claimant's severe and non-severe impairments at the latter stages of the sequential analysis. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'") (*citing Maziarz*, 837 F.2d at 244).

Menough asks the Court to order remand due to the ALJ's failure to label his anxiety disorder with panic attacks as a severe impairment.  Although Plaintiff correctly identified several doctors who diagnosed him with anxiety disorder, the ALJ's failure to label this condition as severe does not constitute reversible error under *Maziarz*.  At step two of the analysis, the ALJ found Plaintiff suffered from three severe impairments.  This finding compelled the ALJ to proceed to the remaining steps of the sequential analysis.  During the ALJ's consideration of Menough's impairments at the latter stages, the ALJ considered both Menough's severe and non-severe impairments, including his diagnosis of anxiety disorder and panic attacks, by evaluating and addressing the medical opinions which discussed these conditions.

A reading of the ALJ's opinion clearly shows the ALJ was aware of Plaintiff's history of problems with anxiety disorder and panic attacks.  During her discussion of the medical evidence, the ALJ acknowledged Plaintiff's struggle with anxiety disorder, but found that many of Plaintiff's symptoms were exacerbated by Plaintiff's misuse of prescription medication and abuse of alcohol.  The ALJ consistently noted instances where Plaintiff's complaints of increased anxiety were linked to either taking too much medication, neglecting to take medication at all, and/or drinking alcohol in addition to taking medication.  The ALJ also acknowledged the

opinions of Drs. Koteswara Rao Kaza, Claudia Johnson Brown and Tae Jung, who each discussed Plaintiff's problems with anxiety disorder and/or panic attacks.  However, the ALJ did not assign significant weight to any of these doctors' opinions because, *inter alia*, they did not discuss the effect Plaintiff's substance abuse had upon his symptoms and functional limitations. On the other hand, the ALJ credited the findings of Plaintiff's psychiatrist, Dr. Madhubala Kothari, who acknowledged Plaintiff's addiction to Xanax and alcohol abuse, and did not diagnose Plaintiff with anxiety disorder.  The ALJ's consideration of this evidence demonstrates the ALJ considered these impairments during her evaluation of Menough's RFC, despite omitting them from her finding at step two.  *See Fisk v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007).  As a result, it is not necessary to remand the case due to the ALJ's failure to name Plaintiff's anxiety disorder as severe.  *Maziarz*, 837 F.2d at 244.

## 2.  Medical Opinion Evidence

Next, Plaintiff asserts the ALJ did not give proper weight to the opinions of Plaintiff's treating and examining physicians.  It is well-recognized that an ALJ must give special attention to the findings of a claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 416.927(c)(2).[2]  The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion

---

[2] Effective March 26, 2012, sections 404.1527 and 416.927 of the Code of Federal Regulations ("C.F.R.") were amended.  Paragraph (d) of each section was redesignated as paragraph (c).  *See* 77 F.R. 10651-01, 2011 WL 7404303.  Because Parts 404 and 416 of the C.F.R. are parallel, henceforth, the undersigned will only cite to Part 416.

is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight under this framework, the ALJ must determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  20 C.F.R. § 416.927(c)(1)-(6).  The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions.  *Id.* An ALJ's failure to adhere to this doctrine may necessitate remand.  *Wilson*, 378 F.3d at 545.  Yet, "[i]f the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (*quoting Wilson*, 378 F.3d at 547).

To begin, Plaintiff objects to the ALJ's treatment of Dr. Koteswara Kaza's opinion.  Dr. Kaza treated Plaintiff between 2003 and 2008.  (Tr. 391).  On May 29, 2008, Dr. Kaza provided a report of Plaintiff's prognosis to the Bureau of Disability Determination.  (Tr. 391-92). Menough presented to Dr. Kaza with the chief complaint of panic attacks.  (Tr. 391).  Plaintiff reported he experienced severe attacks roughly once or twice a day.  (*Id.*).  Dr. Kaza rated Menough's intellectual functioning as average, but noted Plaintiff's frustration tolerance and stress tolerance were poor.  (*Id.*).  The doctor opined that Plaintiff's panic attacks markedly impaired Plaintiff's behavior because they prevented Menough from leaving his house.  (*Id.*). Dr. Kaza diagnosed Plaintiff with Panic Disorder with Agoraphobia and prescribed him Zoloft and Xanax.  (Tr. 392).  But, Dr. Kaza also mentioned Plaintiff was compliant with medication and trying to work, and that Plaintiff's symptoms partially responded to treatment.  (Tr. 391-92).

8

The ALJ did not give controlling weight to Dr. Kaza's findings.  Instead, the ALJ discounted the doctor's opinions because Dr. Kaza "did not discuss the effect of the claimant's substance abuse upon his symptoms and functional limitations."  (Tr. 16).  The ALJ also noted inconsistencies within Dr. Kaza's findings.  For example, the ALJ contrasted Dr. Kaza's finding that Plaintiff could not leave his house with the doctor's observation that Plaintiff was trying to work.  (*Id.*).  Additionally, the ALJ felt Dr. Kaza's findings were undermined by the doctor's failure to explain why or how Plaintiff's symptoms only partially responded to treatment.

Despite Plaintiff's objections, the ALJ supplied valid reasons for discounting Dr. Kaza's findings.  It was proper for the ALJ to limit the weight attributed to Dr. Kaza's findings due to the opinion being internally inconsistent.  *See* 20 C.F.R. § 416.927(c)(2)-(4).  Furthermore, given Plaintiff's documented history of alcohol and substance abuse during the time in which he sought treatment from Dr. Kaza, it was reasonable to expect Dr. Kaza to comment upon how this behavior impacted Plaintiff's conditions.  Because Dr. Kaza's opinion was silent as to this factor, the ALJ assigned less weight to the doctor's opinion.   It was appropriate for the ALJ to consider this factor in weighing Dr. Kaza's findings as the Sixth Circuit has found this type of omission to be a legitimate reason for an ALJ to question a doctor's findings.  *See Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 888-89 (6th Cir. 2011) (The fact that the claimant's treating physicians failed to address her substance abuse problem "was more than substantial evidence to support the ALJ's decision to grant their opinions little weight.").

The same reasoning justifies the ALJ's rejection of Dr. Claudia Johnson Brown's opinions.  On October 20, 2008, Plaintiff presented to Dr. Johnson Brown for a clinical interview.  (Tr. 413-19).  Dr. Johnson Brown opined Menough suffered from moderate and marked impairments in various areas of mental functioning.  The ALJ partially rejected Dr.

Johnson Brown's opinions because the doctor did not address the effect Plaintiff's substance abuse had upon his mental functionality – a valid concern noted by the Sixth Circuit in *Vorholt*. 409 F. App'x at 888-89.

Plaintiff contends it was not proper for the ALJ to use this shortcoming to discount Dr. Johnson Brown's opinion because neither the Social Security Administration nor the ALJ asked Dr. Johnson Brown to address Plaintiff's substance abuse as part of her evaluation. Thus, Menough maintains any deficiency in Dr. Johnson Brown's opinion was perpetuated by the Social Security Administration. But, Plaintiff's argument ignores the well-established statutory scheme governing disability claims – which is, that the claimant bears the burden of establishing his entitlement to benefits. *See Matthews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Plaintiff failed to cite any regulation or case law suggesting that the Social Security Administration or ALJ otherwise had a duty to confront Dr. Johnson Brown regarding this issue. It appears Plaintiff is attempting to shift his burden to prove an entitlement to benefits to the Commissioner by implying it was the burden of the Social Security Administration or ALJ to ask Dr. Johnson Brown about the impact of his substance and alcohol abuse. But, unfortunately for Plaintiff there is nothing to support his notion that there was such a duty upon the Social Security Administration or ALJ. To the contrary, at all times, Plaintiff bore the responsibility of demonstrating to Social Security he was disabled despite his substance and alcohol abuse problems – not vice versa. *See Moon*, 923 F.2d at 1181.

Notwithstanding, the ALJ provided other legitimate reasons for reducing the weight assigned to Dr. Johnson Brown's opinions. The ALJ indicated she also discredited Dr. Johnson Brown's opinions because they were not fully consistent with the findings of Plaintiff's treating

10

psychiatrist, Dr. Madhubala Kothari.  In April 2008, Plaintiff presented to Dr. Kothari for an examination.  (Tr. 387-88).  The doctor recorded Plaintiff's complaints of panic and anxiety, but also noted Menough's admitted addiction to Xanax and alcohol.  (*Id*.).  Dr. Kothari diagnosed Plaintiff with Mood Disorder NOS, Benzodiazepine Abuse Disorder and Borderline Personality Disorder.  (Tr. 387).  But, unlike Dr. Johnson Brown, Dr. Kothari did not diagnose Plaintiff with panic disorder.  Additionally, Plaintiff confessed his alcohol and substance abuse to Dr. Kothari, admitting to drinking three beers and/or one bottle of whiskey each night and being addicted to Xanax.  On the other hand, Plaintiff was not so forthcoming with Dr. Johnson Brown.  Menough only told Dr. Johnson Brown that he drank "two beers a couple of times each week."  (Tr. 415).  These differences, however small, further justify the differential treatment between the two opinions because they reflect the basis on which each doctor rendered his respective opinion.

Next, Plaintiff challenges the ALJ's treatment of Dr. Tae Jung's opinions.  On November 11, 2008, Dr. Jung completed a two-page questionnaire regarding Plaintiff's mental health.  (Tr. 422-23).  Plaintiff only physically presented to Dr. Jung on two occasions: 1) Plaintiff's initial appointment in June 2008; and 2) the date Dr. Jung completed the instant report.  (*Id*.).  Dr. Jung diagnosed Menough with Generalized Anxiety Disorder with recurrent panic attacks, Generalized Social Disorder, Depression and Agoraphobia.  (*Id*.).  Dr. Jung noted Plaintiff had worked at nine different jobs over the past 18 months, but could not maintain any of these positions due to his mental conditions.  (*Id*.).  When asked how Plaintiff responded to therapy, Dr. Jung described Menough as "stable" but commented Plaintiff "still g[ot] agitated, [had] panic attacks [and] agoraphobia [and a] difficult time holding jobs."  (Tr. 423).  Dr. Jung also confirmed Plaintiff was compliant with treatment.  (*Id*.).  The final question on the document asked Dr. Jung to opine about any limitations Plaintiff's impairments placed on his ability to

11

work.  (*Id.*).  Dr. Jung responded Menough "c[ould not] hold down any jobs [at] the moment [secondary] to his med[ical] conditions as described" in the report.  (*Id.*).

The ALJ acknowledged Dr. Jung's report, but never expressly indicated how much weight she attributed to Dr. Jung's opinions.  The ALJ only commented that Dr. Jung's finding regarding Menough's ability to work, was an opinion on an issue reserved exclusively to the Commissioner. (Tr. 18).  This was a proper observation because only *medical opinions* supplied by a treating source are entitled to deference.  *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010).  Opinions on issues reserved to the Commissioner – such as whether a claimant is employable—are not medical opinions, nor deserving of any particular weight.  *Id.*

Although Plaintiff challenges the ALJ's failure to explicitly label the amount of weight she attributed to Dr. Jung's findings, this challenge is moot.  Even when an ALJ does not comport with the procedural requirements of the treating source rule, the violation may be deemed harmless "where the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation."  *Wilson*, 375 F. App'x at 547.  Here, while the ALJ neglected to openly state that she assigned less than significant weight to Dr. Jung's opinion, the ALJ provided sufficient insight into her view of the doctor's opinions.  The explanation provided signified that the ALJ did not credit Dr. Jung's opinion and adequately explained her reasons for doing so.  Thus, the ALJ's failure to adhere to the letter of the treating source doctrine does not warrant remand.  *See id.*

Lastly, Menough challenges the ALJ's decision to discount the findings of Ms. Vicki Pelletier, a social worker, who met with Plaintiff at various times and completed a Mental Impairment Questionnaire in February 2010.  (Tr. 441-46).  Ms. Pelletier assessed Plaintiff's mental capacity for 20 different mental functioning activities.  (Tr. 441-42).  Ms. Pelletier

indicated Menough suffered from a marked limitation in 10 mental activities; a moderate limitation in 5 mental activities; and no significant limitation in the remaining 5 areas of mental functioning.  (*Id*.).  She also assessed Plaintiff's GAF score as being 60.  (Tr. 442).  Ms. Pelletier diagnosed Plaintiff with Panic Disorder with Agoraphobia, Depressive Disorder and Borderline Personality Disorder, but also noted Plaintiff's reports of self-medicating with alcohol.  (Tr. 443).  She further opined that Plaintiff's anxiety related disorder rendered him completely unable to function independently outside of his home and would cause him to miss more than four days of work each month.  (Tr. 446).

The ALJ did not fully credit Ms. Pelletier's findings.  The ALJ explained Ms. Pelletier was not an acceptable source as defined in 20 C.F.R. § 404.1513 and 416.913, and that her findings were internally inconsistent, inconsistent with Dr. Kothari's findings, unsupported by objective evidence and did not speak to what effect Plaintiff's substance abuse had upon his mental functioning.  Menough maintains it was improper for the ALJ to discredit Ms. Pelletier's findings based upon her status as an unacceptable medical source.  Had the ALJ disregarded Ms. Pelletier's opinions solely because she was not an acceptable medical source, Plaintiff's objection might have teeth.  Social Security Ruling 06-03p admonishes against such terse conduct and ensures claimants that all relevant evidence will be considered in evaluating their application regardless of whether it was submitted from an acceptable medical source or from an "other source".  SSR 06-03p.

However, the ALJ here did not summarily dismiss Ms. Pelletier's findings on this account alone.  Instead, the ALJ supplied a host of reasons for discounting the social worker's findings.  For example, the ALJ highlighted that Ms. Pelletier's GAF rating of 60 did not coincide with her opinion that Plaintiff had several marked limitations. Likewise, the ALJ noted

the inconsistency between Ms. Pelletier's finding that Plaintiff was completely unable to function independently outside the home and the objective evidence in the record which indicated Plaintiff had left his home to apply for jobs and had actually gained employment after his disability onset date, suggesting he was able to function outside of his home, at least to some degree.

Although Plaintiff argues Ms. Pelletier's findings were consistent with the medical opinions offered by Drs. Kaza, Jung and Johnson Brown, this assertion, even if true, is unavailing to Menough.  On review, it is the Court's responsibility to determine whether there is substantial evidence in the record to support the Commissioner's decision. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009).  Even if there is evidence supporting the opposite conclusion, the undersigned must defer to the ALJ's finding if it is supported by substantial evidence. *Id.*  Here, there is support in the record for the ALJ's finding, namely the medical opinions of Plaintiff's treating psychiatrist, Dr. Kothari and state agency psychologists, Dr. Tonnie Hoyle and Dr. Steven Meyer – each of whom the ALJ credited.

Dr. Tonnie Hoyle evaluated Plaintiff's record in July 2008.  (Tr. 393-96, 397-410).  Dr. Hoyle's evaluation acknowledged and summarized the medical reports in the record from Dr. Kothari and Dr. Kaza.  (Tr. 395).  Dr. Hoyle did not believe Dr. Kaza's opinions were entitled to controlling weight because the doctor did not discuss Menough's substance or alcohol abuse, and because the doctor's opinions appeared to be based on Plaintiff's self-reports.  (Tr. 395-96).  These observations support the ALJ's assessment of Dr. Kaza's findings.  Likewise, Dr. Hoyle opined that Plaintiff was capable of working given the appropriate working environment. The non-exertional limitations within the ALJ's RFC are reflective of Dr. Hoyle's opinions.  Finally, the ALJ's decision is also supported by the opinion of Dr. Steven Meyer who affirmed Dr.

Hoyle's findings regarding Plaintiff's psychological capacity.  (Tr. 420).  Therefore, there is substantial evidence in the record to support the ALJ's RFC and ultimate decision to deny Plaintiff's applications for benefits.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  September 4, 2012.